UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 20-21948-CIV-MORENO

ADAM J. RUBINSTEIN, M.D., P.A.; ADAM
RUBINSTEIN, M.D., FACS,

        Plaintiff,

vs.

SIAMAK S. OURIAN, M.D.; EPIONE
MEDICAL CORPORATION; EPIONE
BEVERLY HILLS, INC.,

        Defendant.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

THIS CAUSE came before the Court upon Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and Improper Venue (**D.E. 9**), filed on **July 2, 2020**.

THE COURT has considered the motion, the response, the reply pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motion is DENIED.

There are four issues in this Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. First, whether Plaintiffs' complaint satisfies the Florida Long-Arm statute. Second, whether the jurisdiction over the Defendants would comport with Due Process. Third, whether the Defendants' affidavit was sufficient to refute Plaintiffs' unaverred allegations. Finally, whether venue is proper in the Southern District of Florida. The Court finds for Plaintiffs on all issues, and accordingly **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction.

### I. Facts and Background

Adam Rubenstein, M.D., and Adam Rubenstein, M.D., P.A. bring this complaint alleging that Dr. Simon Ourian M.D., Epione Medical Corporation, and Epione Beverly Hills, Inc. orchestrated a tortious and fraudulent scheme to defame the Plaintiffs. In short, both parties are plastics surgeons—Plaintiff is based in Aventura, Florida while Defendant is based in Beverly Hills, California. In 2016, Plaintiff posted a blog on his Facebook page wherein he commented on a story published by the *Daily Mail*, a gossip newspaper. Compl. ¶ 47. The newspaper article concerned a botched liposuction procedure performed by Dr. Ourian, and Plaintiff made further remarks about the Defendants' qualifications (or lack thereof). Compl. ¶ 48. Plaintiff then alleges that Defendant, in retaliation, conspired with third-party agents to post negative and false reviews of Plaintiff on sites such as Google, RateMDs, Vitals, and Yelp. Compl. ¶¶ 55-58. Plaintiff's patients then brought the posts to his attention. Compl. ¶ 60. Plaintiff alleges tortious interference with business relationships, defamation and slander, libel *per se*, fraud, negligence, and asks for a permanent injunction and punitive damages. Defendants file a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

### II. Legal Analysis

#### 1. Florida Long-Arm Statute

Defendants first argue that they are not subject to personal jurisdiction under the Florida Long-Arm Statute, Fla. Stat. § 48.193(1)-(2). The relevant provision is "(1)(a)(2) Committing a tortious act within this state." In Florida, a nonresident defendant "commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and

accessed in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); *see also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court). The tort of defamation "is committed in the place where the defamatory material is published." *Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL 6558397, a *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018). And where the alleged defamatory statement is published on a website to readers worldwide, the pivotal issue is whether the information was "accessed, and thereby published, in Florida." *Id.*

Defendants argue that Plaintiffs did not sufficiently allege facts that show the defamatory posts were accessed, and therefore published, in Florida. "A party asserting jurisdiction in Florida over a nonresident defendant for a defamation claim must make a prima facie showing that that the purported defamatory statements were not merely accessible to, but also 'accessed by a third party in Florida.'" *Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010)). In the complaint, Plaintiffs alleged "[f]ollowing the start of the Defendants' smear campaign against Dr. Rubinstein some patients started bringing to his attention that he was receiving very poor negative reviews online." Compl. ¶ 60. This is the only reference to a third party accessing the alleged defamatory material. Defendants argue that the complaint was insufficient to allege a tort was committed in Florida—they argue Plaintiffs needed to *specifically identify by name* the third parties that accessed the online post, whereas Plaintiffs argue the allegation that Dr. Rubinstein's *patients accessed the post* and brought it to his attention without more detail is sufficiently specific.

In *Catalyst Pharm.*, the Eleventh Circuit found the plaintiff's assertion that "statements were accessed by Catalyst and others in Florida" was insufficient to meet the above standard. *Id.*

3

That Court noted that attaching exhibits to the complaint showing Floridian third parties commenting on the posts, or affidavits to that effect would have been sufficient. *Id.* In a similar internet defamation case, Judge Gayles also found that this "specific identification" requirement was not met because "Maritime does not identify a single third-party who it contends accessed the alleged defamatory material within Florida, it has failed to state a cause of action for defamation and failed to satisfy Florida's long-arm statute." *Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-CV-60323, 2018 WL 2938376 (S.D. Fla. June 11, 2018). In that complaint, however, the plaintiffs did not even make a *general* allegation of third-party access.

But neither of these cases control where Plaintiff makes more than a conclusory allegation but does not go as far as naming names. Ultimately, the Court finds the Plaintiff here alleges enough to survive a 12(b)(6) motion, and enough to meet Florida's jurisdictional standard. Plaintiffs will eventually have to allege more specifics to survive summary judgment, but at this stage, the Plaintiffs do enough to put the Defendants on notice with respect to their theory of the case. Thus, the Florida Long-Arm Statute's subsection on tortious acts provides personal jurisdiction here.

## 2. Personal Jurisdiction Under the Due Process Clause

Defendants also argue that this Court does not have specific personal jurisdiction over them, as is required by the Due Process clause. The Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. Under this test, the Court must examine: (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the

4

exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Louis Vuitton Malletier, S.A.*, 736 F.3d 1339, 1355 (11th Cir. 2013).

Prong 1 is surely satisfied. With respect to prong 2, there are two applicable tests for determining whether purposeful availment occurred. First, the "effects test," and second, the traditional minimum contacts test.[1] Under the "effects test," set out in *Calder v. Jones*, 465 U.S. 783 (1984), a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356. This occurs when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* Plaintiff has alleged sufficient facts to make the prima facie case that Defendants engaged in the alleged scheme precisely to retaliate against Plaintiff, and since Plaintiff's business is based in Miami, it is plausible to assume that Defendants anticipated harm would be suffered in Miami.

Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013). The analysis is much the same as the effects test. Defendants allegedly directed their conduct at Florida in order to retaliate against the Plaintiff by harming his business and reputation. Committing an intentional tort in a jurisdiction should be

---

[1] The Eleventh Circuit has instructed, "[c]ircuit courts have applied the traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the 'effects test' in cases involving intentional torts." *Louis Vuitton*, 736 F.3d at 1356 (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172 (2d Cir. 2010))

enough notice such that Defendant can reasonably anticipate being haled into court there. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida.")

Finally, under prong 3, the exercise of jurisdiction must comport with traditions notions of fair play and substantial justice. In considering this issue, the Court must address the following factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, and (4) the judicial system's interest in resolving the dispute. *Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). In *Lovelady*, the Eleventh Circuit found that jurisdiction did not offend fair play because, "the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy. The Supreme Court in *Calder* made clear that '[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.'" *Id.* Lastly, other courts in this district have found that it is proper to exercise jurisdiction over an out-of-state defendant with minor (if any) contacts to the jurisdiction when said defendant is accused of defamation after posting online. *See, e.g., Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149 (S.D. Fla. 2017); *Tobinick v. Novella*, 2015 WL 328236 (S.D. Fla. Jan. 23, 2015). On the other hand, Judge Altonaga decided against jurisdiction in a similar case. There, the plaintiff, however, was not a Florida resident, very few of the defendant's Twitter followers lived in Florida, and the court had also declined to find that there

6

was purposeful availment of the forum in that case. *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019).

Thus, the Court has personal jurisdiction over Defendants under Florida's long-arm statute, and the exercise of that jurisdiction does not offend due process because Defendants allegedly intentionally targeted their conduct to have maximum effect in this jurisdiction.

### 3. Sufficiency of Defendants' Affidavit

Defendants filed an affidavit along with their Motion to Dismiss, and they argue that their affidavit sufficiently refuted Plaintiffs' prima facie personal jurisdictional case. It states, *inter alia*, that "Defendants have never committed a tortious act within Florida."[2] Plaintiffs do not submit their own affidavit in response, but rather point out that Defendants' affidavit does not fully refute Plaintiffs' allegations because it does not specifically deny that defendant created and/or directed the allegedly fake and defamatory negative reviews. (D.E. 12 at 9.) *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) ("Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction **unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.**") (emphasis added). *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

In *Posner*, the Eleventh Circuit found an affidavit that looked identical to Defendants' affidavit here to be "of little significance to the jurisdictional question." *Id.* The Eleventh Circuit describes the affidavit as such: "The affidavit primarily explains Salem's corporate structure and status; summarily asserts that Salem never has done business in or directed contacts into Florida; admits certain peripheral connections with the state; and denies in a conclusory way any other

---

[2] It also states that Defendants do not have an office in Florida, do not have a phone number in Florida, have never provided medical services in Florida, etc. But Plaintiffs do not dispute any of those points.

7

actions that would bring Salem within the ambit of the Florida long-arm statute." *Id.* at 1215 (11th Cir. 1999). The *Posner* Court then concluded that such statements, although presented in the form of factual declarations, are, in substance, legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction. *Id.*

Thus, the Court should not dismiss the plaintiffs' complaint on the grounds that plaintiffs did not respond to defendants' conclusory affidavit denying jurisdictional facts. That is especially true in this case because the jurisdictional grounds that defendants deny, namely that defendants have committed no tortious act in the state of Florida, are also at the heart of the substantive dispute.

### 4. Improper Venue

Finally, Defendants ask, in the event the Court finds there is personal jurisdiction, that the Court transfer the case to the Central District of California. I do not believe the case should be transferred. Under 28 U.S.C. § 1391, an action can be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under (1), the action may have been brought in the Central District of California, and under (2), the action may have been brought in the Southern District of Florida or the Central District of California. Courts engage in a two-part inquiry to determine the propriety of transfer to another

district: "(1) whether the action might have been bought in the proposed transferee court and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified." *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F.Supp.2d 1292, 199 (S.D. Fla. 2012). These private and public interest factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 fn.1 (11th Cir. 2005).

District Courts around the country have considered the question of proper venue when an action does not center on physical harms. The vast majority find that that venue under § 1391(a)(2) is proper in the district where the injured party resides and where the defamatory statements were published. *See, e.g., Capital Corp. Merch. Banking v. Corp. Colocation, Inc.*, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (finding venue proper where website was accessed and plaintiff's reputation was harmed); *Muse v. Bravo Sports,* 2005 WL 6050732, at *10-11 (S.D. Iowa July 12, 2005) (venue for a professional athlete's misappropriation claim was proper in the district in which the athlete resided and the statements were published); *Cummings v. W. Trial Lawyers Ass'n,* 133 F.Supp.2d 1144, 1150-51 (D. Ariz. 2001) (venue in a libel case was proper in the district where the defendant sent four defamatory letters and the plaintiff resided); *DaimlerChrysler Corp. v. Askinazi,* 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) ("In defamation cases, for example, courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in

9

the same district."); *Reifin v. Microsoft Corp.,* 104 F.Supp.2d 48, 51 (D.D.C. 2000) (venue in a libel case was proper in the district where the plaintiff resided and in which the defendant submitted to personal jurisdiction); *Miracle v. N.Y.P. Holdings, Inc.,* 87 F. Supp. 2d 1060, 1073 (D. Hawai'i 2000) (venue in a libel case was proper in the district where defamatory statements were published and the plaintiff resided). Additionally, in a similar internet defamation case where venue could have laid in either where plaintiffs were harmed or where defendants were based, Judge Ungaro extensively analyzed each of the factors mentioned above and conclusively decided that venue was proper in the Plaintiff's choice of forum. *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149 (S.D. Fla. 2017).

Ultimately, whichever District the action is in, there will be witnesses and relevant documents in the other District. Those competing interests end up being a wash. The Court is left with a forum's familiarity with the governing law, the weight afforded a plaintiff's choice of forum, and trial efficiency and the interests of justice. These factors all cut in favor of the venue lying in the Southern District of Florida. It is more familiar with the Florida law that will apply in this action, it was chosen by the Plaintiff, and it is nationally recognized for its speed and efficiency (whereas the Central District of California has the most judicial emergency vacancies of any district court in the U.S.).[3] Given that the Defendant bears the burden of demonstrating that another district is more convenient, and that the "plaintiff's choice in forum should not be disturbed unless it is clearly outweighed by other considerations," the motion to transfer venue should be denied. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996).

---

[3] Madison Alder, *Two Trump Picks Would Help Ease California Judicial Shortage*, BLOOMBERG L. (Nov. 13, 2019), https://www.bloomberglaw.com/document/X7SQMC24000000?bna_news_filter=us-law-week&jcsearch=BNA%25200000016e64cdd7f0a36fffef3b1d0001#jcite

10

DONE AND ORDERED in Chambers at Miami, Florida, this 10ᵃ of November 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record