UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-21948-CIV-MORENO**

ADAM J. RUBINSTEIN, M.D., P.A.; ADAM
RUBINSTEIN, M.D., FACS,

      Plaintiff,

vs.

SIAMAK S. OURIAN, M.D.; EPIONE
MEDICAL CORPORATION; EPIONE
BEVERLY HILLS, INC.,

      Defendant.

_____/

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Summary Judgment **(D.E. 77 and 78)**.

THE COURT has considered the motions, the responses, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motions are **GRANTED**. Plaintiffs' motion for summary judgment on the counterclaim is GRANTED and Defendants' motion for summary judgment on Plaintiffs' claims is **GRANTED**.

    I.    **Introduction**

Adam Rubinstein, M.D., and Adam Rubinstein, M.D., P.A. bring this complaint alleging that Dr. Simon Ourian M.D., Epione Medical Corporation, and Epione Beverly Hills, Inc. orchestrated a tortious and fraudulent scheme to defame the Plaintiffs. In short, both parties are doctors—Plaintiff is a plastic surgeon based in Aventura, Florida while Defendant is a doctor based

in Beverly Hills, California. There is, apparently, tension between plastic surgeons and non-plastic surgeons who perform cosmetic procedures. They compete for the same patients and non-plastic surgeons claim they can achieve the same results as plastic surgeons with less invasive procedures, while plastic surgeons argue patients should choose a doctor board certified in surgery and cosmetic procedures.

In 2016, Plaintiff posted a blog on his Facebook page wherein he commented on a story published by the *Daily Mail,* a gossip newspaper. The newspaper article concerned a botched liposuction procedure performed by Dr. Ourian, and Dr. Rubinstein made further remarks about the Defendants' qualifications (or lack thereof), highlighting the fact that Defendant had previously been disciplined by the California Medical Board. Plaintiff also self-produced videos discussing Defendant's medical practice and hoping "to give the public accurate information." Plaintiff then noticed negative reviews of his practice from "patients" he had never heard of popping up online. These reviews were often written in broken English and, sometimes, the same online profile had also written positive reviews of Defendant, Dr. Ourian.

Dr. Rubinstein was then contacted on Facebook by an Armenian by the name of "Armen." At that time, Armen used a pseudonym "Viktoria Schafer" and wrote "Dear Dr. Rubinstein I know that on the Internet sites such as Google, Ratemds, Vitals, Judy's Book leave customized negative reviews. I have information that will help you know a lot." Eventually, Plaintiff paid Armen a total of $1,500 in exchange for screenshots of email conversations between Armen and "Max Cooper" and between Armen and the email address simonourian100@gmail.com. The email conversation with simonourian100@gmail.com implies that the owner of that email address hired Max Cooper to post negative reviews of Plaintiff, but the exchange also features simonourian100@gmail.com attempting to pay Armen $10,000 to "forget about the agreement between you and Max."

2

Apparently, Armen had a crisis of conscious and decided to blow the whistle on whoever paid him for the fake reviews. Finally, Plaintiffs submit screenshots of a website in Russian that appears to have text boxes matching the allegedly fake reviews.

Plaintiff alleges that Defendant, in retaliation, conspired with third-party agents to post negative and false reviews of Plaintiff on sites such as Google, RateMDs, Vitals, and Yelp. Plaintiffs' patients then brought the posts to his attention. Plaintiff alleges tortious interference with business relationships, defamation and slander, libel *per se,* fraud, negligence, and asks for a permanent injunction and punitive damages. But even though there is little doubt fake negative reviews were posted about Defendant and fake negative reviews were posted about Plaintiff, there is not a single piece of non-hearsay evidence linking the reviews to Defendant other than the fact that the *same* accounts would post positive reviews of him and negative reviews of the Plaintiff. Finally, Defendant also counterclaims for defamation—he claims that Plaintiff's original statements about Defendant lacked proper context and are therefore defamatory.

## II.   **Summary Judgment Standard**

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

III. **Analysis**

### A. Plaintiffs' Claims

The Court begins with Plaintiffs' claims. The record in this case is not as clear as it could have been, which explains why the Court finds much of Plaintiffs' proffered evidence is inadmissible and grants summary judgment for Defendants on Plaintiffs' claims. By his own admission, Plaintiff's counsel failed to engage in discovery within the allotted time period. After denying Defendants' original summary judgment motion without prejudice, the Court allowed limited discovery for the parties to depose each other and, if possible, depose Armen. The parties were deposed, Armen was not.

Plaintiffs offer several pieces of evidence to prove that Dr. Simon Ourian was indeed the person who caused these fake reviews to be published. The story is recounted above, and Plaintiffs attempt to corroborate that story by 1) Dr. Rubinstein's deposition testimony that Armen told Dr. Rubinstein that Dr. Ourian had hired Armen; 2) Dr. Rubinstein's deposition testimony that Dr. Christian Subbio and Ms. Farrias believe that Dr. Ourian is involved; 3) screenshots of email

4

conversations between Max Cooper and Armen referencing Drs. Ourian and Rubinstein; 4) screenshots of email conversations between Armen and simonourian100@gmail.com; and 5) screenshots showing the same fake accounts have posted negative reviews of Dr. Rubinstein and positive reviews of Dr. Ourian. At best, only one of these items is admissible.

1. <u>Dr. Rubinstein's deposition testimony that Armen told Dr. Rubinstein that Dr. Ourian had hired Armen</u>

Hearsay is a statement that is made outside of the current proceeding and is used to prove the truth of the matter asserted. Fed. R. Evid. 801. It is generally inadmissible, and while there are myriad exceptions to the hearsay rule, none are applicable here. Further, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (citation omitted). Armen's statement to Dr. Rubinstein is clearly hearsay because Armen did not make his statements in this proceeding and it is being used to prove that Dr. Ourian was indeed the one who caused the fake reviews. Thus, Dr. Rubinstein's testimony about that statement is inadmissible and cannot be considered as evidence in favor of Plaintiffs' claims at the summary judgment stage. "A district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer,* 193 F.3d 1316, 1323 (11th Cir. 1999). But here, the hearsay cannot be reduced to admissible form because Armen was not deposed and will not testify at trial. The same analysis applies to Dr. Rubinstein's deposition testimony that Dr. Subbio and Ms. Farrias believe that Dr. Ourian is involved.

2. <u>Screenshots of Email Conversations</u>

5

Federal Rule of Evidence 901 requires that a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "In order for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence." *Burnett v. Stagner Hotel Courts, Inc.,* 821 F.Supp. 678, 683 (N.D. Ga. 1993); *see also Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Plaintiff provides no evidence by which the Court can determine whether the screenshots are *actually* conversations between Armen and Max Cooper and Armen and simonourian100@gmail.com. It does not have the testimony any of the parties to the conversation nor does it have any evidence from Google, for example, showing that emails with these time stamps and addresses in fact exist on their servers. *See Pohl v. MH Sub I, LLC*, 332 F.R.D. 713 (N.D. Fla. 2019) (excluding screenshots for lack of authenticity when proponent offered no evidence of authenticity other than plaintiff's testimony). It is particularly important to authenticate emails in a case centered on fraudulent online posts. 34 AM. CRIM. L. REV. 1387, 1388 (1997) (stating that "the increasing use of electronic mail in the United States, combined with the ease with which it can be forged, should at least give courts pause").

Further, Dr. Ourian denies that the simonourian100@gmail.com address is even his. D.E. 75-1 64:22-64:25. *Williams v. Great-W. Healthcare*, No. CIVA105CV2675RWSGGB, 2007 WL 4564176 (N.D. Ga. June 8, 2007) (citing 2 Kenneth S. Broun, McCormick on Evidence § 227 (6th ed. 2006) ("E-mails can be authenticated by their authorship. The electronic signature that they bear may not be sufficient, however, because of the risk of manipulation of e-mail headers.")). Dr. Rubinstein admits in his deposition that he did not see Dr. Ourian create the account and his only basis for believing that the account belongs to Dr. Ourian is that people usually create email

addresses that use their names. D.E. 79-1 51:12-51:13. Plaintiffs provide no evidence that Dr. Ourian's friends or family corresponded with this address, provide no evidence from Google that Dr. Ourian's name is associated with the address, or otherwise provide any other admissible that these conversations are with Dr. Ourian other than Dr. Rubinstein's personal belief.

Even assuming the emails were authentic and the email address in question belonged to Dr. Ourian, Plaintiffs would still face a hearsay problem. The conversation between Armen and Max Cooper is certainly inadmissible hearsay. And although Dr. Ourian's statements in his conversation would be admissible as a party opponent statement, Armen's replies would still be considered inadmissible hearsay. Fed. R. Civ. P. 801(d)(2). Armen's replies are the only place Dr. Rubinstein or fake revies are mentioned.

3. <u>Reviews</u>

Finally, Plaintiffs offer screenshots of the fake reviews. Some accounts, such as "Christy Turner" and "Marilyn Baldwin" offer 1-star reviews of Dr. Rubinstein **and** 5-star reviews of Dr. Ourian. Of course, they did not see both doctors. Defendants do not deny these reviews are what they purport to be, so the Court does not focus on their authenticity.

Of all the cosmetic-focused doctors in Miami and Los Angeles, it is odd that fake bots would comment on these two doctors. Defendants maintain this still is insufficient to create a genuine dispute that requires denying their motion for summary judgment. "Because [Plaintiffs] assert a factual dispute, the Court must examine the pleadings, affidavits, documents, and depositions to determine if [Plaintiffs] have 'come forward with significant, probative evidence demonstrating the existence of a triable issue of fact,' that amounts to more than a mere scintilla of evidence." *Skyplan Servs. Ltd. v. Aviation Jets, LLC*, No. 08-23372-CV, 2009 WL 10664884

(S.D. Fla. Dec. 22, 2009) (internal citations omitted). The Court concludes that Plaintiffs have not done so.

Even though "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant," "an inference based on speculation and conjecture is not reasonable." *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). At a hypothetical trial, the jury would only be presented with the reviews themselves and the parties' testimony. Dr. Rubinstein, before the reviews started appearing, produced a documentary-like video discussing Dr. Ourian's qualifications and disciplinary history and posted the video on his social media. D.E. 79-1 94:9-100:17. An article on Dr. Rubinstein's website also questioned Dr. Ourian's ethics and medical ability. D.E. 82-7. Dr. Ourian is one of several doctors Dr. Rubinstein has made videos about, and Dr. Rubinstein claims he does these videos in response to his followers' questions about his opinions on various doctors and procedures. For his part, Dr. Ourian testifies that he has no "ill feeling toward" Dr. Rubinstein and "wish[es] him the best." D.E. 75-1 77:13-77:21.

So, Dr. Rubinstein has posted publicly (and negatively) about Dr. Ourian. Then, the fake reviews offering negative reviews for Dr. Rubinstein and positive reviews for Dr. Ourian pop up. But it goes too far to say that reasonable minds could infer, from these limited facts, that Dr. Ourian caused these reviews to be posted by contracting with a Russian comment service when there is no admissible evidence pointing to the involvement of third party or communications between Dr. Ourian and a third party. A finding to the contrary would be pure speculation. "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citing *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928 (7th Cir. 1995)).

4. <u>Conclusion</u>

Thus, because the majority of Plaintiffs' proffered evidence is inadmissible and Plaintiff Dr. Rubinstein does not have sufficient information within his personal knowledge to create a *genuine* issue of fact as to whether Defendants hired Russian service QComment to defame Plaintiffs and tortiously interfere with their business, the Court **grants** Defendants' motion for summary judgment on all of Plaintiffs' claims because all claims (tortious interference, defamation, slander, libel *per se*, fraud, and negligence) fail if Plaintiffs cannot prove Defendants caused the posts.

B. **Counterclaim: Defamation by Implication**

Defendants counterclaim for defamation by implication. The claim focuses on a video and accompanying article Dr. Rubinstein posted on his website and YouTube entitled " EXPOSED- Dr. Simon Ourian Celebrity Dermatologist."[1] The video discusses Dr. Ourian's disciplinary history with the California Medical Board, his education and training, and some of his past patients. Throughout the video, Dr. Rubinstein makes clear that he is not telling his viewers not to see Dr. Ourian, but rather wants to ensure his viewers have all the facts and can make an informed decision. Counterclaimants focus on four categories of statements they argue defame Dr. Ourian by implication. First, that Dr. Rubinstein said Dr. Ourian's license was revoked without giving proper context. Second, that Dr. Rubinstein said Dr. Ourian served five years of probation. Third, that Dr. Rubinstein said that Dr. Ourian is not board-certified "in a manner that gives the appearance that Defendants are operating their medical practice, improperly." Finally, that Dr.

---

[1] *See* YouTube video with the title "Exposed – Dr. Simon Ourian Celebrity Dermatologist" available at: https://www.dr-rubinstein.com/news/exposed-dr-simon-ouriancelebrity-dermatologist/

Rubinstein highlights Defendants call themselves "dermatologists" even though they did not train as dermatologists are not board-certified as such.

"The elements of defamation by implication are (1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts." *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1100 (Fla. 2008). This cause of action can "impose liability upon the defendant who has the details right but the 'gist' wrong." *Rapp*, 997 So. 2d at 1108 (cleaned up). Whether the defendant's statements constitute defamation by implication is a question law for the court to determine. *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018). Whether the publication is defamatory becomes an issue of fact for the jury only where the publication is susceptible of two reasonable interpretations, one of which is defamatory. *Id.*

The Court finds, as a matter of law, that Dr. Rubinstein's comments were not defamatory. To determine whether a statement is defamatory, it must be considered in the context of the publication. *Smith v. Cuban Am. Nat. Found.,* 731 So. 2d 702, 705 (Fla. Dist. Ct. App. 1999). Globally, the Court notes that throughout the publication, Dr. Rubinstein emphasized that he is "not trying to disparage anyone" and is "not telling you *not* to use [a doctor]." So first, Counterclaimants complain that Dr. Rubinstein's publication implied that Dr. Ourian was not permitted to practice medicine because Dr. Rubinstein said his license was revoked, but then he also said the California Medical Board issued a stay of the revocation and instead placed Dr. Ourian on probation. Counterclaimants say the general public would not understand what a "stay" is and therefore, Dr. Ourian was defamed by implication. Dr. Rubinstein gave every fact possible here. If a viewer misinterprets the speaker's words when the speaker has done nothing to affirmatively cause that misinterpretation, the speaker cannot be faulted.

Second, Counterclaimants point out that Dr. Rubinstein said Dr. Ourian was placed on five years of probation. In reality, although he was initially put on five years' probation, he served a little less than four before the Board ended his probation early. Fair—Dr. Rubinstein's statement that Dr. Ourian served five years' probation was false. Counterdefendants/Plainiffs admit that. D.E. 78 at 18. But the Counterclaimants' cause of action is defamation *by implication*—and this is a statement that may be defamatory because it is false, not a factually true one that creates a false impression. Judge Altonaga dismissed a defamation by implication claim for this very same reason when the statement at issue was that "[Plaintiff] was convicted of failing to pay child support" when in reality, plaintiff was *indicted* of failing to pay child support. *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1254-55 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015).

Third, Counterclaimants say that Dr. Rubinstein's comments that Dr. Ourian is not board-certified create the impression that he is improperly conducting his medical practice. It does not. Board certification is relevant in many professions. In our own profession, a plaintiff may want to hire a lawyer that is board certified in civil trials. Many lawyers advertise these qualifications and might point out their competitors have not spent the same time studying and practicing in order to earn such a certification. Lack of board certification does not mean one is engaged in the unauthorized practice of law—that plaintiff is free to hire a trusts and estates lawyer to litigate his case. In fact, Dr. Rubinstein recites from Dr. Ourian's website verbatim in his publication. He notes Dr. Ourian says merely that he "became interested in dermatology and aesthetics during his residency," not that he was formally trained in them. No reasonable juror could interpret such statements as defamatory.

Finally, Counterclaimants say that Counterdefendants "attack" them for not being dermatologists or plastic surgeons but still describing their practice as "cosmetic dermatology."

But it is unclear from Counterclaimants' papers what "false impression" these statements create. Is it that Dr. Ourian is doing something illegal? That is unlikely, because when considering the entire context, it is clear Dr. Rubinstein does not discourage his viewers from seeing Dr. Ourian. That Dr. Ourian has less training than some other dermatologists and plastic surgeons? That may well be true, and in any event, is protected as a matter of opinion. *Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) (holding some defamation by implication claims fail because the statements were protected opinions).

The Court need not consider whether any of Dr. Rubinstein's statements were made with actual malice because the Court finds, as a matter of law, that they are not defamatory to begin with. However, even if they were defamatory, Counterclaimants bear the burden of proving that Dr. Rubinstein acted with malice because Dr. Ourian is a public figure. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). Florida courts have found that individuals who "put [themselves] in the public arena" are public figures for defamation purposes. *Id.* at 1272. *See also Scholz v. RDV Sports, Inc.*, 710 So.2d 618, 626 (Fla. Dist. Ct. App. 1998) (noting that he "drew public attention to himself and his employment status with the [professional team] when he met with newspaper reporters). Look no further than Dr. Ourian's own website which describes him as "one of the world's most famous celebrity doctor, and his clients include some of the world's most famous people." Further, he writes, "there are few places in Hollywood that he walks into without being asked for a selfie. The surgeon to the stars has become a star in his own right, with 2.5 million followers on Instagram and clients in every corner of the globe."

For all these reasons, the Court **grants** summary judgment to Counterdefendants on all Counterclaimants' claims. A final judgment order will follow.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th of September 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record